**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| ALICE RUTH WALTERS, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:22-CV-00766- |
| | § | SDJ-AGD |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g), denying her claim for Title II disability and disability insurance benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the court recommends that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

**I.    PROCEDURAL HISTORY OF THE CASE**

On May 13, 2020, Plaintiff Alice Ruth Walters ("Plaintiff") filed an application for a period of disability and disability insurance benefits under Title II ("Title II") of the Social Security Act (TR 129–30). Plaintiff alleges an onset of disability date of July 18, 2019 (TR 129). On July 21, 2020, the claims were initially denied (TR 65), and upon reconsideration on October 14, 2020 (TR 78), Plaintiff's applications were again denied. On October 23, 2020, Plaintiff requested an administrative hearing ("Hearing") (TR 89–90), which was held before an Administrative Law Judge ("ALJ") on June 8, 2021 (TR 36–55). At the Hearing, the ALJ heard testimony from Plaintiff and a vocational expert ("VE") (TR 36–55). On October 8, 2021, the ALJ issued an unfavorable

decision denying Plaintiff's application (TR 20–35). On October 28, 2021, Plaintiff requested review of the ALJ's decision by the Appeals Council (TR 126–28). The Appeals Council denied Plaintiff's request on May 17, 2022, making the decision of the ALJ the final decision of the Commissioner (TR 4–9). On September 7, 2022, Plaintiff filed the instant lawsuit (Dkt. #1).[1] On December 15, 2022, the Social Security Administration filed its Answer, which included the Administrative Record (Dkt. #9). Plaintiff filed her Opening Brief on January 26, 2023, (Dkt. #14), the Commissioner filed its Brief in Support of the Commissioner's Decision on March 24, 2023, (Dkt. #15), and Plaintiff filed her Reply Brief on March 28, 2023, (Dkt. #16).

## II.    STATEMENT OF RELEVANT FACTS

### 1.  *Age, Education, and Work Experience*

Plaintiff was born on April 5, 1969, making her fifty (50) years of age at the time of alleged onset of disability (TR 129). Plaintiff's age classification at all relevant times was that of a "[p]erson closely approaching advanced age." *See* 20 C.F.R. § 404.1563(d). Plaintiff alleges that she graduated from high school and has an associate degree in business administration (Dkt. #14 at p. 2), and the VE testified that Plaintiff's past work experience includes: (1) school bus driver, 913.463-010, medium occupation, SVP 4; (2) field supervisor, 909.137-014, light occupation, SVP 6; and (3) billing clerk, 214.362-042, sedentary occupation, SVP 4 (TR 51–52). The ALJ found that Plaintiff has engaged in substantial gainful activity since July 18, 2019, the alleged date of onset of disability (TR 28, 51); however, the record indicates a possible onset date of March 6, 2020. The ALJ did not end the sequential evaluation process at the substantial gainful activity step.

---

[1] On July 18, 2022, Plaintiff requested an extension of time to file a civil action (TR 3). The Appeals Council granted Plaintiff an extension on September 30, 2022, (TR 1–2), extending Plaintiff's time to file a civil action to September 7, 2022.

### 2.  *Relevant Medical Records*

The ALJ found Plaintiff "has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; and lumbar radiculopathy" (TR 25). The ALJ also found Plaintiff "has non-medically determinable mental impairments of depression and anxiety that do not interfere with the claimant's ability to perform basic mental work activities." (TR 26). Relevant to these conditions and the arguments raised by Plaintiff are the medical opinions and evaluations from Plaintiff's healthcare providers: Lisa Hernandez, D.C. ("Dr. Hernandez"), Lawrence Sloan, Ph.D. ("Dr. Sloan"), and State Agency Medical Consultant, Dennis Pacl, M.D., Kavitha Reddy, M.D., and Margaret Meyer, M.D. (together, "SAMCs"). The ALJ noted on several occasions that he considered the entire record in making his decision (TR 20–35). The issues before the ALJ were as follows: (1) whether Plaintiff is disabled under Section 216(i) and 223(d) of the Social Security Act; and (2) whether Plaintiff meets the insured status requirements of Sections 216(i) and 223 of the Social Security Act. (TR 23).

### a.  **Psychological Report – Dr. Sloan**

On September 30, 2020, Plaintiff appeared before Dr. Sloan for a Mental Status Exam (TR 266–71). Dr. Sloan observed that Plaintiff arrived on-time for the virtual appointment, was casually dressed and adequately groomed, was calm and cooperative, was adequately nourished, had no observable physical abnormalities or involuntary motor movements, was generally still, appeared to be a generally reliable informant, appropriately responded to questions, and was generally consistent (TR 267). Dr. Sloan noted that Plaintiff reported her own historical information and reported her chief complaint as physical impairment (TR 267).

Dr. Sloan noted that Plaintiff "denied any history of psychiatric care, psychotherapy, psychiatric hospitalizations, suicide attempts, or other known significant mental health concerns."

(TR 268). Dr. Sloan stated that Plaintiff "elects not to take pain medication." (TR 268). Dr. Sloan also reported that Plaintiff "described her mood as 'not really depressed' but including recurrent irritability." (TR 268). Plaintiff reported poor sleep—about four hours per night—leading to chronic tiredness (TR 268). Dr. Sloan noted that Plaintiff does not experience anhedonia, avolition, bouts of crying, suicidal ideation, hallucinations, or concentration issues (TR 268). However, Plaintiff reported to Dr. Sloan that she gets distracted frequently and feels hopeless (TR 268).

Dr. Sloan noted that Plaintiff wakes up around 5:00 a.m., drives a school bus for two hours in the morning and two hours in the afternoon, homeschools her granddaughter during the day, and eats dinner, watches television, and then goes to bed around 9:00 p.m. (TR 268). Plaintiff reported to Dr. Sloan that she was able to meet all of her activities of daily living, she can bathe herself, groom herself, dress herself, and feed herself (TR 268). Dr. Sloan also noted that Plaintiff reported shopping for food, preparing food, washing clothes, and cleaning the house (TR 268). Additionally, Dr. Sloan noted that Plaintiff has a driver's license, understands how to pay bills and manage her funds, has a history of independent living, and can take medication as prescribed (TR 268). Plaintiff did, however, note a reduction in productivity due to pain (TR 268). Dr. Sloan noted that Plaintiff lives with her husband, adult son, and granddaughter, she has a close relationship with her husband, children, and grandchildren, has no friends, and enjoys gambling, fishing, and spending time with her grandchildren (TR 268).

Dr. Sloan reported Plaintiff's mental status as follows: (1) appearance, speech, cooperation, and behavior were normal; (2) thought process was logical and goal directed; (3) thought content was appropriate and not suggestive of delusions, obsessions, or ongoing suicidal or homicidal ideations; (4) perceptual abnormalities were not present; (5) mood and affect were calm, cooperative, and generally euthymic; (6) sensorium and cognition were alert and oriented to

person, place, date, and situation, and her general intelligence was determined to be average; (7) immediate, short-term, and long-term memory were intact; (8) concentration and attention were intact; and (9) judgment and insight were intact (TR 269).

Regarding Plaintiff's functional capacity, Dr. Sloan found that

[b]ased upon the provided history and [Plaintiff's] presentation during the interview, it appears [she] is able to understand, carry out, and remember instructions involving one and two steps. It appears she is able to carry out and remember complex instructions. . . . [I]t appears she is able to sustain concentration and persist in work-related activity and maintain a reasonable pace. . . . [I]t appears she is able to maintain effective social interaction on a consistent and independent basis, with supervisors, co-workers, and the public. . . . [I]t appears [she] is able to deal with normal pressures in a competitive work setting."

(TR 270).

Ultimately, Dr. Sloan made no mental health diagnosis and found that Plaintiff's prognosis was favorable and that "[s]ignificant mood impairment is not indicated at this time." (TR 270).

### b.  State Agency Medical Consultants

At the initial level, Dr. Pacl completed Plaintiff's disability determination that found severe impairment for "7240 – Spine Disorders" and non-severe impairments for "6490 – None Established-Medical Evidence in File" (TR 59). Dr. Pacl noted that Plaintiff's alleged symptoms are pain and weakness (TR 60). However, Dr. Pacl found that Plaintiff's "statements about the intensity, persistence, and functionally limiting effects of the symptoms [are not] substantiated by the objective medical evidence alone." (TR 60). In evaluating the consistency of Plaintiff's statements about her symptoms, Dr. Pacl considered (1) activities of daily living; (2) the location, duration frequency, and intensity of Plaintiff's pain and other symptoms; (3) precipitating and aggravating factors; and (4) medical treatment (TR 60). Dr. Pacl found that "[t]he alleged limitations are partially consistent with medical and other evidence of record." (TR 60).

Dr. Pacl then evaluated Plaintiff's residual functional capacity ("RFC") (TR 60). Dr. Pacl found that Plaintiff has exertional limitations for: lifting/carrying occasionally of 20 pounds, and frequently for 10 pounds; standing/walking for a total of about 6 hours out of an 8-hour workday; sitting for a total of about 6 hours out of an 8-hour workday; and unlimited pushing/pulling, except as shown for lifting/carrying (TR 60–61). Dr. Pacl also noted Plaintiff's postural limitations for: occasionally climbing ramps/stairs, climbing ladders/ropes/scaffolds, balancing, stooping, kneeling, crouching, and crawling (TR 61). Dr. Pacl did not find that Plaintiff had manipulative, visual, communicative, or environmental limitations (TR 61). Again, Dr. Pacl noted: "The alleged limitations are partially consistent with medical and other evidence of record." (TR 62). Dr. Pacl did not make a finding about Plaintiff's past relevant work "because all potentially applicable Medical-Vocational Guidelines would direct a finding of 'not disabled' given [Plaintiff's] age, education and RFC," and Dr. Pacl found that Plaintiff could "adjust to other work." (TR 62). Dr. Pacl further found that Plaintiff "demonstrates the maximum sustained work capability for the following: LIGHT," concluding that Plaintiff is not disabled (TR 62).

On reconsideration, Dr. Meyer and Dr. Reddy considered Plaintiff's alleged changes to her medical condition. Specifically, Plaintiff reported that

> The burning and pain from the Tarlov cyst has gotten worse, the numbness is more frequent. The vertigo from the Tarlov cyst is more frequent, the pain is so severe in [her] neck that [she] cannot drive a school bus due to not being able to turn [her] head very far in either direction. [She] cannot lift over 10 pounds without severe pain. [She] cannot work in an office due to not being able to sit or stand for more than 10 minutes at which point [she has] to lay down.

(TR 67). The SAMCs found that Plaintiff has a severe impairment of "7240 – Spine Disorders" and a non-severe impairment of "7160 – Other and Unspecified Arthropathies" (TR 71). Dr. Meyer noted that "there is no MDI or other objective medical evidence supporting any mental limitations." (TR 71). The SAMCs found, as with Dr. Pacl, that Plaintiff's statements regarding

her symptoms were partially consistent with the medical and non-medical evidence in Plaintiff's file (TR 73). The SAMCs found Plaintiff had the same RFC exertional limitations as determined by Dr. Pacl, but Plaintiff's postural limitations increased kneeling, crouching, and crawling from occasionally to frequently (TR 73–74). Ultimately, the SAMCs on reconsideration found that Plaintiffs has a sustained work capacity of "LIGHT," and she is not disabled (TR 76).

### 3. *Hearing Testimony*

#### a. **Plaintiff's Testimony**

On June 8, 2021, the ALJ held a Hearing (TR 36–55). At the Hearing, the ALJ questioned Plaintiff, who elected to proceed without a representative (TR 40). Plaintiff answered questions from the ALJ regarding her personal life, her education, her hobbies, her employment history, her injury, and her alleged symptoms and limitations related to work and engaging in daily life activities (TR 40–50). Plaintiff testified that she is a smoker, sleeps about four hours a night, can lift and carry a gallon of milk in each hand, needs to alternate between sitting and standing, does not have concentration issues, is not taking any prescription pain medications, and does not have mental health issues (TR 40–49). Plaintiff also testified that a typical day has her moving around the house, feeding her animals, sitting on the couch or porch, and lying down frequently (TR 49). Plaintiff testified that she does not have issues bathing or grooming herself other than brushing her hair (TR 49).

#### b. **VE's Testimony**

The VE testified about Plaintiff's past employment history, noting one occupation classified as medium, one as light, and one as sedentary (TR 51). The ALJ posed three hypotheticals to the VE and asked questions to determine whether a person with such limitations in the hypotheticals could perform Plaintiff's past relevant work (TR 52–53).

The VE first classified Plaintiff's past work as follows:

Q:    Can you tell me about [Plaintiff's] past work?

A:    Yes. We have a school bus driver. This is DOT 913.463-010. This is a medium occupation, SVP 4. We also have a field supervisor. This is DOT 909.137-014. This is a light occupation, SVP 6. Last, we have a billing clerk. This is DOT 214.362-042. This is a sedentary occupation, SVP 4. And that is all.

(TR 51–52). The ALJ then posed hypothetical limitations to the VE, asking which past work a

person could perform with the various limitations proposed. The VE testified that an individual

with the limitations in the first hypothetical would be able to perform Plaintiff's past work.

Q:    You bet. All right. If you could please assume a hypothetical individual of the [Plaintiff's] age and education. Further assume the individual is able to lift and/or carry 20 pounds on occasion, 10 pounds frequently with the ability to sit for six hours out of an eight-hour day, walk and/or stand for six hours out of an eight-hour day. Pushing and pulling would be unlimited except for the lifting and carrying restrictions. Occasional overhead reaching bilaterally. Occasional climbing of ramps and stairs as well as climbing ladders, ropes, and scaffolds. Occasional balancing, stooping, kneeling, crouching and crawling. Would that hypothetical individual be capable of performing the [Plaintiff's] past work?

A:    Yes, the billing clerk would meet that RFC. The—as far as the field supervisor, as generally performed, I would say yes, but as actually performed, I believe it would exclude that RFC. It looks like it was actually performed at more than a medium level.

Q:    Okay. What if we were to modify that to an individual who would need to alternate between sitting and standing on an every half hour without leaving the work station or going off task, would those same jobs be available?

A:    No, I believe that the field supervisor would probably be precluded, however, the billing clerk would—I believe that that would remain as long as they were able to stay on task.

Q:    Is that as actually, generally performed, or both?

A:    Both.

REPORT AND RECOMMENDATION − Page 8

Q:      What if instead of remaining on task with that every half hour, they would need about a five-minute cooling off period or time to stretch, walk around every half hour, five minutes?

A:      So every half hour —.

Q:      They would be off task five minutes.

A:      — they would need a five minute — okay. Okay. I believe that's going to really get into the realm of exceeding typical employer tolerances, especially for being off task. Yeah, there is—there would be some allowance for walking around and staying on task, however it probably wouldn't always, you know, be tolerated on a—like clockwork every 30 minutes type situation. So I would say that that's going to preclude sustained employment as far as that goes.

Q:      And has your testimony been consistent with the DOT?

A:      Yes, sir.

Q:      Does the DOT address off task behavior?

A:      No, it does not. That—my opinion is based on my experience and expertise in the field of vocational rehabilitation and job placement.

Q:      All right. Thank you. And [Plaintiff], do you have any questions of [the VE]?

A:      *By Plaintiff*: No, sir.

(TR 51–54).

## III.    FINDINGS OF THE ALJ

### 1.  *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of her disability claim is not disabled. *Id.* at § 404.1520(b). Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her

residual functional capacity, age, education, or work experience. *Id.* at § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* at § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if she can perform her past work based on her residual functional capacity. *Id.* at § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. *Id.* at § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability, and at the last step, the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

### 2. *ALJ's Disability Determination*

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation (TR 20–35). At step one, the ALJ found Plaintiff had engaged in substantial gainful activity after the date of alleged onset of July 18, 2019 (TR 25). The ALJ found substantial gainful activity during the third quarter of 2019 and the first through fourth quarters of 2020 (TR 25). The inquiry could have ended at this point, but the ALJ did not make his determination based solely on this finding. *See* 20 C.F.R. § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience."). At step two, the ALJ found Plaintiff has severe impairments for degenerative disc disease of the cervical and lumbar spine, and lumbar radiculopathy (TR 25). Additionally, the ALJ found that Plaintiff "has non-medically determinable mental impairments of depression and anxiety that do not interfere

with the [Plaintiff's] ability to perform basic mental work activities." (TR 26). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526) (TR 27). At step four, the ALJ determined Plaintiff has the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk 6 hours out of an 8-hour workday and can sit for 6 hours out of an 8-hour workday. Pushing and/or pulling are unlimited except for her lifting and carrying restrictions. She can occasionally reach overhead bilaterally. She can occasionally climb ladders, ropes and/or scaffolds, and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She would need to alternate between sitting and standing every half hour without leaving the work station or going off task.

(TR 28). Continuing the step four analysis, the ALJ determined that Plaintiff is able to perform past relevant work as a billing clerk (TR 31). Because the ALJ found that Plaintiff is able to perform past relevant work, he found that Plaintiff "has not been under a disability, as defined by the Social Security Act, from July 18, 2019, through the date of [the ALJ's] decision." (TR 31). This determination ended the sequential inquiry, and step five was not addressed.

## STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021)); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391,

392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence "need not be a preponderance." *Webster*, 2021 WL 5563333, at *1 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). Conflicts in the evidence are resolved by the ALJ; the court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Social Security Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by the five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff's first issue is whether the ALJ properly considered the medical evidence in the record in making the determination at step three that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526)." (TR 27; Dkt. #14 at pp. 3–4). Plaintiff's second issue is whether the ALJ properly considered the VE's professional opinion at step four in determining Plaintiff's RFC (Dkt. #9 at pp. 3–4).[2]

---

[2] Plaintiff also raises an issue with whether the ALJ properly considered her age. However, Plaintiff makes nothing more than the conclusory statement "that the ADJ [*sic*] did not take in consideration the plaintiffs [*sic*] approaching 'advanced age'." (Dkt. #14 at p. 4). No other argument or analysis was provided. This is insufficient to challenge the ALJ's decision.

***The ALJ Properly Considered Medical Listing Requirements in Step Three.***

Plaintiff's Brief appears to argue that she meets the definition of disability under Medical Listing 1.15 and 1.16 (Dkt. #14 at p. 3).[3] As support for this assertion, Plaintiff alleges that it is impossible for anyone to truly know how much pain an individual is in and that a decision not to take pain medication is not evidence that she is not in severe pain (Dkt. #14 at p. 3). Additionally, Plaintiff states that she meets the definition of disability under Medical Listing 1.18 (Dkt. #14 at p. 3). Listing 1.18 states as follows:

> 1.18 Abnormality of a major joint(s) in any extremity (see 1.00l), documented by A, B, C, and D:
>> A. Chronic joint pain or stiffness.
>> AND
>> B. Abnormal motion, instability, or immobility of the affected joint(s).
>> AND
>> C. Anatomical abnormality of the affected joint(s) noted on:
>>> 1. Physical examination (for example, subluxation, contracture, or bony or fibrous ankylosis); or
>>> 2. Imaging (for example, joint space narrowing, bony destruction, or ankylosis or arthrodesis of the affected joint).
>> AND
>> D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of 12 months, and medical documentation of at least one of the following:
>>> 1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or
>>> 2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or
>>> 3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

---

[3] Plaintiff does not allege that the ALJ used an improper standard to evaluate the evidence, and thus, the court must only determine whether substantial evidence supports the ALJ's decision. *See Webster*, 19 F.4th at 718.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.18.

To start, Plaintiff does not provide evidence to establish a disability under Medical Listing 1.18. Medical Listing 1.18 requires an individual to meet A., B., C., **and** D. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.18. Notably, Plaintiff does not address Subsection D, nor does any evidence in the record support a finding that Plaintiff meets the definition of Subsection D of Medical Listing 1.18 (Dkt. #14 at p. 3). Thus, the court finds that the ALJ's decision is not in error in finding that Plaintiff is not disabled under Medical Listing 1.18.

Plaintiff appears to argue that the ALJ erred in finding that Plaintiff did not meet the definition of disability under Medical Listings 1.15 and 1.16. The court is not in a position to reweigh the evidence, but rather to examine the record to determine if the ALJ's finding is supported by substantial evidence. At the third step, the ALJ stated: "After a review of the entire record, the undersigned is in agreement with the prior determinations of the non-examining consultants of the State agency that no listing is met or equaled." (TR 27). In other words, the ALJ reviewed all the evidence presented and agreed with the SAMCs that Plaintiff did not meet the definition of a disability under the Medical Listings.

The ALJ found that Plaintiff has severe impairments and addressed the same in his decision. For example, the ALJ relied on Plaintiff's subjective testimony and the objective medical records (TR 29–31). Plaintiff testified that she has "pain in her low back, tailbone, left leg, and neck." (TR 29). Plaintiff also testified that she did not take pain medication "because it made her nauseous," she was able to walk about 20 yards, she was able to stand and sit for about 10 minutes at a time while shifting positions, and she could carry a gallon of milk in each hand (TR 29). She also testified that she typically "cleaned around her house, fed her dogs, laid on her couch or front porch," and she is "able to cook and do laundry." (TR 29).

In reviewing medical records, the ALJ stated that Dr. Hernandez noted that Plaintiff claimed she "was unable to lift less than 10 pounds," had "moderate pains in her neck and low back," and "had no treatment since her low back and neck injuries on July 18, 2019." (TR 29). Some of this information is inconsistent with the information Plaintiff testified to in her hearing before the ALJ; namely, Plaintiff testified she could carry a gallon of milk in each hand, but told Dr. Hernandez that she "was unable to lift less than 10 pounds." (TR 29, 31). Additionally, in evaluating Dr. Hernandez's report, the ALJ found that "there is no indication of whether or not it is a functional ability that would be in effect for 12 months or just claimant's ability on the date of the evaluation." (TR 31). As such, the ALJ found that Dr. Hernandez's report was "not persuasive." (TR 31).

The ALJ also details the findings of Plaintiff's May 6, 2020, MRI of the lumbar spine, which found "no lumbar compression fracture," and "no spondylolisthesis." (TR 29). The MRI did show "disk dehydration . . . with significant loss of disk space height," "multiple Schmorl's nodes noted without concerning marrow signal abnormality," "broad-based disk bulging . . . without a focal protrusion," "no high-grade central or foraminal stenosis," and "low thoracic cord and conus were unremarkable." (TR 29).

In considering Plaintiff's July 29, 2020, medical examination, the ALJ discussed how the "[n]otes indicate the [Plaintiff] was prescribed medication . . . but the [Plaintiff] did not take them because of fear of side effects." (TR 29). Plaintiff "had a total of 3 chiropractic treatments and has not had any injections or back surgeries." (TR 29). Plaintiff was observed to sit comfortably, to acquire a full, upright position without difficulty, to have a stable gait, to walk and balance on heels and toes, and to stand upright (TR 29). The medical examination also showed that Plaintiff had "good alignment with a slight lean on her curvature with apex to the left," "a heavy collapse

at L3-4 on the right and a slight lateral listhesis to the right," "joint space narrowing in the hips bilaterally," "evenly spaced disks with slight disc space narrowing seen at L2-3." (TR 29). Plaintiff "was given an assessment of sacroiliac joint pain, coccydynia and low back pain." (TR 29).

In considering the entire record, the ALJ's decision explicitly analyzes the following medical reports in the record: (1) Plaintiff's May 6, 2020, MRI and examination; (2) Plaintiff's July 29, 2020, Texas Back Institute-Plano examination and x-ray; (3) Plaintiff's August 18, 2020, Epic Healthcare and Physical Medicine examination and x-ray; (4) Plaintiff's September 30, 2020, psychological consultative examination performed by Dr. Sloan; and (5) Plaintiff's February 22, 2021, Texas Back Institute examination (TR 29–30). The ALJ noted the issues that could be causing pain for Plaintiff, but also noted the inconsistencies. For example, Plaintiff clearly has some damage to her low back and spine, however, she was consistently noted as having a steady gait, sitting comfortably, rising to an upright position with ease, not taking pain medication, balancing and walking on her heels and toes without issue, and there was "no evidence of any spinal-related motor, reflex, sensory, or neurological deficits" (TR 29–31). As such, the ALJ determined the following:

> *After careful consideration of the evidence*, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, *the claimant's statements* concerning the intensity, persistence and limiting effects of these symptoms *are not entirely consistent with the medical evidence and other evidence in the record* for the reasons explained in this decision.

(TR 30) (emphasis added).

In evaluating the medical opinions, the ALJ determined that Dr. Pacl's and Dr. Meyer's opinions at the initial and reconsideration stages were persuasive (TR 31). The ALJ found that Dr. Reddy's opinion was not persuasive because it was inconsistent with the medical evidence where "the evidence of record establishes the [Plaintiff's] impairments produce more severe symptoms

than found in [Dr. Reddy's] opinion (TR 31). In other words, the ALJ determined that Plaintiff's residual functional capacity was *more* restrictive than that determined by Dr. Reddy. The ALJ found Dr. Hernandez's opinion to be unpersuasive "as there is no indication of whether it is a functional ability that would be in effect for 12 months," and the report is inconsistent with other evidence in the record (TR 31). Finally, the ALJ found Dr. Sloan's opinion to be unpersuasive because "there is no mental medical determinable impairments in the medical records in this report, nor [Plaintiff's] allegations." (TR 31). Ultimately, the ALJ found that "[t]he intensity of the claimant's symptoms and the extent of the alleged functional limitations are not supported by the objective medical evidence." (TR 30).

The ALJ, having considered the testimony, medical evidence, and other evidence in the record, determined that Plaintiff does not meet the requirements of the Medical Listings (TR 27). Plaintiff provides no evidence to rebut the ALJ's finding. As the Commissioner states, "Plaintiff has not identified evidence showing that her impairments satisfied the requirements of any listing. Plaintiff failed to carry her burden of proof at step three." (Dkt. #15 at p. 7). The court agrees. *See Whitehead v. Colvin*, 820 F.3d 776, 780–81 (5th Cir. 2016) ("At step three of the evaluation process, [the plaintiff] has the burden of establishing that his impairment meets or equals the criteria for presumptive disability described in the listings."). As discussed, *supra.*, the ALJ relied on the medical and non-medical evidence in the record to reach his decision. Furthermore, Plaintiff engaged in substantial gainful activity following the alleged onset date (TR 25). Accordingly, this court "cannot say that 'no credible evidentiary choices or  medical findings support the [ALJ's] decision.'" *Whitehead*, 820 F.3d at 781. Thus, the court finds that the ALJ's decision is supported by substantial evidence in the record.

***The ALJ Properly Considered the Vocational Expert's Testimony in Step Four.***

Having determined that the Plaintiff does not have a disability that meets or equals one of the Medical Listings, the ALJ moved on to determine whether the Plaintiff has the residual functional capacity to perform her past work. As the ALJ stated: "If the [Plaintiff] has the residual functional capacity to do her past relevant work, the [Plaintiff] is not disabled." (TR 25). The ALJ determined Plaintiff was able to perform her past relevant work as a billing clerk, which is sedentary (TR 31). Plaintiff disputes this determination by arguing the ALJ did not properly consider the VE's testimony at the hearing (Dkt. #14 at p. 4). The court disagrees with Plaintiff.

The ALJ determined Plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the residual functional capacity of lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk 6 hours out of an 8-hour workday and can sit 6 hours out of an 8-hour workday. Pushing and/or pulling are unlimited except for her lifting and carrying restrictions. She can occasionally reach overhead bilaterally. She can occasionally climb ladders, ropes and/or scaffolds, and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She would need to alternate between sitting and standing every half hour without leaving the work station or going off task.

(TR 28).

Plaintiff relies on the VE's testimony to support her assertion that the "ADJ [*sic*] did not take into consideration the professional opinion of the vocational expert." (Dkt. #14 at p. 4). In relying on the VE's testimony, Plaintiff focuses on the VE's response to the ALJ's question about a hypothetical person with the above-quoted residual functional capacity. However, the ALJ added a limitation that required the hypothetical person to take a 5-minute break every 30 minutes, and that person would be off task for the 5-minute break (TR 53). The VE responded that this limitation would "really get into the realm of exceeding typical employer tolerances." (TR 53). The VE testified that "there would be some allowance for walking around and staying on task," but that being off task for 5 minutes every 30 minutes would "preclude sustained employment." (TR 53).

While the ALJ need not consider the VE's testimony at step four, the VE's testimony was for a hypothetical person with a more restrictive residual functional capacity than Plaintiff. *See Williams v. Califano*, 590 F.2d 1332, 1334 5th Cir. 1979) ("Vocational testimony is not necessary if the administrative law judge concludes that a claimant could return to his former occupation."). The ALJ found that Plaintiff's residual functional capacity would require her "to alternate between sitting and standing every half hour *without leaving the work station or going off task*." (TR 28). (Emphasis added). Thus, Plaintiff's reliance on the VE's testimony is misplaced.

Regardless, the ALJ's determination of Plaintiff's residual functional capacity is supported by substantial evidence. Plaintiff's physical limitations have been discussed at length, *supra.*, and support the ALJ's residual functional capacity determination. Similarly, Plaintiff's mental capacity does not limit Plaintiff. As evidenced by the medical evaluation by Dr. Sloan, Plaintiff's immediate, working, short-term, and long-term memory were all intact (TR 30). Plaintiff's attention and concentration were intact (TR 30). Plaintiff "was able to carry out and remember complex instructions," and "was able to sustain concentration and persist in work-related activity and maintain a reasonable pace." (TR 30). Additionally, Plaintiff "was able to maintain effective social interaction on a consistent and independent basis, with supervisors, co-workers and the public" and "was able to deal with normal pressures in a competitive work setting." (TR 30). Dr. Sloan, the psychological consultant, did not indicate nor recommend that Plaintiff needed to be off task every 30 minutes.

Plaintiff's own testimony from the ALJ hearing does not support a need to be off task every 30 minutes during a workday. The ALJ asked Plaintiff is she had any memory problems, to which Plaintiff responded, "No, sir." (TR 48). The ALJ then asked Plaintiff if she had issues maintaining focus or concentration, and Plaintiff responded, "No, sir." (TR 48). Plaintiff also confirmed that

she did not have any mental issues that affect her greatly. The ALJ asked: "Do you have any mental issues such as depression or anxiety that you're dealing with?" (TR 49). Plaintiff responded: "No, sir. I get depressed from time to time, but it's not ongoing and I don't need treatment for it." (TR 49).

Additionally, the VE testified that Plaintiff could perform her past relevant work as a billing clerk as actually and generally performed, and that Plaintiff could perform her past relevant work as a field supervisor as generally performed, but not as actually performed (TR 52). This testimony was considered by the ALJ. "The vocational expert testified that, given the residual functional capacity detailed above, a hypothetical individual would be capable of performing the [Plaintiff's] past relevant work of a billing clerk as actually and as generally performed in the national economy." (TR 31). Accordingly, the ALJ found that "in comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform the job of a billing clerk as actually and generally performed." (TR 31).

The court is not permitted to reweigh the evidence but is tasked with determining whether the ALJ's decision is supported by substantial evidence. *Harris*, 209 F.3d at 417. As demonstrated above, the ALJ based his decision on the medical and non-medical evidence in the record. Among other factors, the ALJ's decision is based on Dr. Sloan's report, the VE's testimony, and Plaintiff's testimony. Accordingly, the court finds that there is substantial evidence in the record to support the ALJ's decision.

## CONCLUSIONS AND RECOMMENDATION

For the foregoing reasons, the court recommends the Commissioner's decision be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 12th day of March, 2024.**


AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE